UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOURCE ONE, USA, INC.,

              Plaintiff,

v.

CHALLENGE, INC., GALAXY
ASSOCIATES, INC., and DAVID
CROSLEY,

              Defendants.

_____/

Case No. 09-13275

HONORABLE SEAN F. COX
United States District Judge

OPINION & ORDER

Plaintiff Source One, USA, Inc. ("Source One") filed this diversity breach of contract and fraudulent conveyance action on June 19, 2009, against Defendants Challenge, Inc. ("Challenge"), David Crosley ("Crosley"), Galaxy Associates, Inc. ("Galaxy"), and Challenge Acquisition, Inc. ("CAI") (collectively, "the Defendants"). The matter is before the Court on the Defendants' "Motion to Compel Arbitration and for Partial Dismissal" [Doc. No. 8]. The parties have fully briefed the issues, and hearing was held on October 15, 2009. For the reasons below, the Court **GRANTS** the Defendants' motion to compel arbitration of Source One's claims against Challenge, and **GRANTS IN PART** and **DENYS IN PART** the Defendants' motion to dismiss the claims against Crosley, Galaxy and CAI.

BACKGROUND

Defendant Challenge is an Indiana corporation engaged in the manufacturing industry, which developed an effective rubber-to-metal bonding technology. After the death of one of their key employees in 2004, however, Challenge was left without sufficient contacts in the

1

market with which to sell their technology. [*See* Def.'s Br., Doc. No. 11, p.6].

Plaintiff Source One is a Michigan corporation engaged in the business of selling other company's products on a commission basis.

Sometime in late 2007 or early 2008, a third party introduced Challenge's CEO, Crosley, to Mr. John Prochaska ("Prochaska"), the President of Source One. Following telephone discussions between Prochaska and Crosley, Prochaska sent Crosley a proposed agreement on June 30, 2008, whereby Source One would serve as the sales representative for Challenge's products.

The parties sent various drafts of the agreement back and forth for a few weeks, and on July 17, 2008 Crosley drove from Indiana to Romulus, Michigan, where Crosley met with Prochaska and signed the agreement between Source One and Challenge ("the Agreement").

Under the Agreement, Source One agreed to solicit opportunities for the sale of Challenge's products and services. [Agreement, Def.'s Ex. 2, Doc. No. 11, ¶2a]. In exchange, Challenge promised to compensate Source One for its services with a guaranteed monthly stipend of $7,000.00, or 10% of net monthly sales, whichever was higher. *Id.* at ¶3. The initial agreement was for a period of five years, with a clause allowing for successive renewal periods of two years. *Id.* at ¶9. In the event of the agreement's termination, which either party could effect with or without cause given ninety days prior notice, *Id.* at ¶10, the following clause, in pertinent part, governed the subject of post-termination compensation:

> If this agreement is terminated, by either party as provided and or defined in this agreement, compensation payable to [Source One] will continue to be paid for a period of twenty four (24) months following the termination date.

*Id.* at ¶11.

2

The Agreement also contemplates the possibility that Challenge could be sold to a third party during the life of the Agreement, and stipulates that "this agreement is binding upon the parties hereto as well as their respective successors, assigns and/or joint venturers." *Id*. at ¶16. While the clause goes on to hold that a purchaser of Challenge's assets would also be liable for any termination payments to Source One, the Agreement also contains the following provision in the event that a successor entity does not continue termination payments to Source One:

> If for any reason the successor, joint venture or transferee fails, refuses or otherwise neglects to pay the post termination commissions then [Challenge] and or its principal owners shall pay to [Source One] all post termination commissions due, again, as described in this agreement.

*Id*.

Finally, in the event disputes should arise between the parties, the Agreement contains the following arbitration clause:

> Any case or controversy arising among or between the parties hereto, this agreement or the subject matter herein, shall be settled by arbitration in Michigan, at the Regional Offices of the American Arbitration Association, One Oakland Towne Square, Suite 1600, Southfield, Michigan, 48076, United States of America (248) 352-2816, under the then prevailing rules of the American Arbitration Association. The decision of the arbitrators shall be final and binding and the prevailing party shall be entitled to recover all reasonable attorney fees and costs.

*Id*. at ¶13.

The Agreement was signed by two of Challenge's officers on the company's behalf: Crosley, Challenge's CEO, and Challenge's President and COO, Jack Desario. Prochaska, the President of Source One, signed on his company's behalf.

Challenge alleges that, at the time it signed the Agreement with Source One, its company was marginally profitable. In September of 2008, however, Challenge alleges that its business

began to decline, and the company was in dire straights by the time its primary lender, First Business Capital, called in Challenge's loan on January 5, 2009. [Def.'s Br., Doc. No. 11, p.7].

Crosley alleges he tried to keep Challenge afloat as a going business concern after the loan was called in, borrowing money from his retirement fund and taking out another mortgage on his residence. [*See* Crosley Affidavit, Def.'s Ex. 1, Doc. No. 11, ¶15]. Faced with little alternative in the first quarter of 2009, after Challenge lost $257,405 [*See Id*. at ¶16], Crosley tried to find a third party interested in buying Challenge or its assets.

Galaxy Associates, Inc. ("Galaxy"), an Ohio corporation, expressed interest in buying the assets of Challenge. Galaxy and Challenge came to an agreement at the end of February 2009, whereby Galaxy proposed to purchase Challenge's assets. [Def.'s Br., Doc. No. 11, p.8].

On March 24, 2009, between the time where Galaxy agreed in principle to buy Challenge's assets and the signing of a purchase agreement on April 10, 2009, Challenge terminated the Agreement with Source One. [*See* Def.'s Br., Doc. No. 11, p.7]. To date, however, Source One has not been paid pursuant to the Agreement's termination clause.

When the transaction finally closed on April 10, 2009, however, Galaxy itself did not buy Challenge's assets. Rather, Galaxy's wholly-owned subsidiary corporation, Challenge Acquisition, Inc. ("CAI"), organized under the laws of the state of Delaware, purchased substantially all of the assets of Challenge [*See* Purchase Agreement, Def.'s Ex. 3, Doc. No. 11].

Source One filed its complaint in the instant action on June 19, 2009, naming Challenge, Galaxy, CAI, and Crosley as defendants. Source One brings the following seven causes of action against the defendants:

Count I:      Breach of Contract - Against Challenge
Count II:     Breach of Contract - Against Galaxy & CAI

4

| | |
|---|---|
| Count III: | Breach of Contract - Against Challenge & Crosley |
| Count IV: | Fraudulent Conveyance - Against Galaxy & CAI |
| Count V: | Successor Liability - Against Galaxy & CAI |
| Count VI: | Unjust Enrichment - Against Challenge, Crosley, Galaxy, & CAI |
| Count VII: | Fraud - Against Crosley |

[*See* Pl.'s Complaint, Doc. No. 1].

On July 31, 2009, the Defendants filed their instant "Motion to Compel Arbitration and For Partial Dismissal." [Doc. No. 8]. In that motion, Challenge seeks an order from the Court ordering arbitration of Source One's claims against Challenge [Counts I, III and VI], and argues claims against Galaxy, CAI and Crosley should be dismissed. [*See* Def.'s Br., Doc. No. 8, p.24].

In opposition to the Defendants' motion, Source One concedes that its claims against Challenge must be arbitrated. [Pl.'s Br., Doc. No. 14, pp.2-3]. However, Source One argues that its claims against Crosley are also subject to arbitration. *Id*. at 4. Alternatively, if this Court were to find that arbitration of Crosley's claims was not required, Source One argues that Crosley has sufficient contacts with the state of Michigan for this Court to exercise personal jurisdiction over him. *Id*. at 6-11. Finally, Source One argues that dismissal of any claims against Crosley, Galaxy, or CAI is improper, as Source One pled facts sufficient to survive a motion to dismiss.

Source One also requests a stay in these proceedings until arbitration of its claims against Challenge is complete. *Id*. at 5.

### STANDARD OF REVIEW

The Defendants bring the majority of their instant motions pursuant to FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must treat all well-pleaded allegations in the complaint as true. *Kostrzewa v. City of Troy*,

247 F.3d 633, 638 (6th Cir. 2001).  Dismissal is only proper if it, on the pleadings themselves, the plaintiff does not have a "reasonably founded hope" of making his or her case.  *Bell Atlantic v. Twombley*, 550 U.S. 554, 127 S.Ct. 1955, 1970 (2007).

ANALYSIS

I. <u>Source One's Claims Against Challenge Are Subject to Arbitration</u>.

Both the Defendants and Source One concede that Source One's claims against Challenge are subject to the Agreement's arbitration clause. [*See* Def.'s Ex. 2, Doc. No. 11, ¶13]. The Court therefore **GRANTS** the Defendants' Motion to Compel Arbitration [Doc. No. 14] of Source One's claims against Challenge [Counts I, III, and VI].

II. <u>Source One's Remaining Claims Are Not Subject to Arbitration</u>.

Source One argues that, in addition to its claims against Challenge, its claims against Crosley are also subject to the Agreement's arbitration clause. [Pl.'s Br., Doc. No. 14, pp.2-3]. Source One also requests leave to conduct discovery, after which they argue Galaxy and CAI may also be subject to the Agreement's arbitration clause.  *Id*. at 4.  As none of these parties are bound by the Agreement's arbitration clause, however, the Court holds that Source One's remaining claims are not subject to arbitration.

In general, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. . . ."  *Doran v. Bondy*, 2005 WL 1907252, *5 (W.D. Mich. Feb. 18, 2005).  Source One argues, however, that with respect to its claims against Crosley, "there are circumstances in which even a non-signatory may be bound by an arbitration agreement." [Pl.'s Br., Doc. No. 14, p.3].  While true, the Court holds that this case does not involve one of those circumstances.

6

Five theories have been recognized as bases for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.  *Doran* at *5, citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000).  Relying upon the analysis in *Bondy*, Source One argues that Crosley is bound by the Agreement's arbitration clause as an agent of Challenge. [*See* Pl.'s Br., Doc. No. 14, p.3 ("as an undisputed agent and employee of Challenge, Inc., Crosley as well is bound by the arbitration clause")].

The facts of this case differ from those in *Bondy*.  In *Bondy*, the plaintiffs sued their investment advisor and her investment company for mismanagement of their accounts.  *Bondy* at *1.  Written agreements between the company and the plaintiffs required arbitration of those claims, but the investment advisor argued that the plaintiffs' agreements did not require their claims against her to be arbitrated alongside the plaintiffs' claims against the investment company.  *Id*.

The Western District of Michigan ruled for the plaintiffs, holding that "Bondy's alleged misconduct occurred while she was acting in her capacity as an agent of an employee of [the investment company]."  *Id*. at *5.  "[A]gents and employees of a principle subject to an arbitration agreement will be bound by the agreement even though they did not sign the agreement *where the employee's or agent's acts give rise to the plaintiff's claim.  Id*. at *6 (emphasis added), citing *Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990).  The Sixth Circuit in *Arnold* expanded upon this reasoning, holding that arbitration was required where "the[] alleged acts [securities violations, in that case] relate to the nonsignatory defendant's behavior *as officers and directors or in their official capacities as agents of the [] Corporation*."

*Id*. at 1282 (emphasis added).

Here, unlike the circumstances in *Bondy* and *Arnold*, Crosley is not being sued for actions taken in his official capacity as CEO of Challenge. Crosley signed the Agreement on behalf of Challenge, in his official capacity as CEO of that company. Unlike the tort (or in the case of the securities violations in *Arnold*, quasi-tort) actions brought against principals and their agents in *Bondy* and *Arnold*, here Source One's cause of action centers around contract law. Source One has brought forth no case which a state or federal court has held a corporate officer liable under agency theory for his company's breach of contract. Furthermore, Source One's claim for fraud [Count VII] against Crosley is in Crosley's individual capacity, and not in the context of his employment with Challenge. As such, the Court holds that Crosley is not required to arbitrate the claims brought against him by Source One.

Source One's argument that Galaxy and CAI can also be bound by the Agreement's arbitration clause is likewise without merit. In Michigan, the traditional rule of successor liability:

> examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by a merger, with shares of stock serving as consideration, the successor generally assumes all of its predecessor's liabilities. However, *where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies.*

*RDM Holdings Ltd. v. Continental Plastics Co.*, 281 Mich. App. 678, 717 (2008). In the instant case, Source One argues that one of these narrow exceptions applies, i.e., that "the transaction was fraudulent." *Id*.

Even assuming *arguendo* that the asset sale between Challenge and CAI was fraudulent, neither Galaxy nor CAI were parties to the contract between Source One and Challenge. As

8

such, the Court holds that Galaxy and CAI are not required to arbitrate the claims brought against them by Source One.

      III.  <u>This Court Has Personal Jurisdiction Over David Crosley</u>.

      Source One brings claims against Challenge's sole shareholder and former CEO, David Crosley, for breach of contract [Count III], unjust enrichment [Count VI], and fraud [Count VII]. Crosley argues that the Court should dismiss these claims against him, as he has insufficient Michigan contacts to support personal jurisdiction in this Court. [Def.'s Br., Doc. No. 11, p.16]. The Court finds this argument without merit for the reasons that follow.

      In diversity actions, "federal courts must look to the law of the forum state to determine the district court's in personam jurisdictional reach." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989) (internal citation omitted). Thus, this Court must first look to the state of Michigan's long-arm statute to determine the existence of personal jurisdiction over Defendant Crosley. Once personal jurisdiction under Michigan's long-arm statute is satisfied, however, the Court must still evaluate whether the exercise of such jurisdiction would run afoul of the Due Process Clause of the Fourteenth Amendment. *Id*.

      Michigan's long-arm statute authorizes two types of personal jurisdiction over an individual: 1) "general" jurisdiction as defined in M.C.L. § 600.701; and 2) "specific," or "limited" jurisdiction as defined by M.C.L. § 600.705. In its response brief, Source One does not contest that this Court lacks "general" jurisdiction over Crosley pursuant to M.C.L. § 600.701.

      M.C.L. § 600.705 provides that courts may exercise "limited" personal jurisdiction over an individual "to render personal judgments against the individual or his representative arising

out of an act" which creates any of the following relationships:

>   (1) The transaction of any business within the state.
>   (2) The doing or causing an act to be done, or consequences to occur, in the state
>       resulting in an action or tort.
>   (3) The ownership, use or possession of real or tangible personal property situated
>       within the state.
>   (4) Contracting to insure a person, property or risk located within this state at the
>       time of contracting.
>   (5) Entering into a contract for services to be rendered or for materials to be
>       furnished in the state by the defendant.

M.C.L. §§ 600.705(1)-(5).  Source One argues that limited personal jurisdiction over Crosley is

satisfied by the "any business" test in M.C.L. § 600.705(1)[1]. [Pl.'s Br., Doc. No. 14, p.10].

In *Sifers v. Horen*, 385 Mich. 195 (1971), the Michigan Supreme Court held that, for

purposes of establishing limited in personam jurisdiction, "the word 'any' means just what it

says.  It includes 'each' and 'every'. . . It comprehends the 'slightest'."  *Id*. at 199, n.2.  Thus, "if

[the defendant] conducted even the slightest act of business in Michigan. . . [Michigan's long-

arm statute] is satisfied."  *Lanier v. The American Bd. of Endontics*, 843 F.2d 901, 906 (6th Cir.

1988).

In *Flint Ink Corp. v. Brower*, 845 F.Supp. 404, 408 (E.D. Mich. 1994), this Court held

that "any business" conducted within the meaning of Michigan's long-arm statute included a

scenario where, as here, the defendant engaged in contract negotiations with an in-state plaintiff,

and ultimately signed the contract at issue in the state of Michigan.  Just as in *Flint Ink Corp*.,

---

[1] This "any business" test for limited jurisdiction over an individual in M.C.L. § 600.705(1) is exactly the same as the "any business" test for limited jurisdiction over a corporation in M.C.L. § 600.715(1).  Further, other cases discussing jurisdiction over individual defendants rely upon *Sifers v. Horen* and its discussion of "any business," despite *Sifers*'s discussion of § 600.715(1).  *See, e.g., McNic Oil & Gas Co. v. IBEX Resources Co., L.L.C.*, 23 F.Supp.2d 729, 735 (E.D. Mich. 1998).  As such, the Court considers Michigan cases construing the "any business" test for corporations as analogous to the "any business" test for individuals.

here Crosley "traveled to the State of Michigan seeking out business relationship with a Michigan corporation," and "entered into an agreement. . . ."  *Id.*  As such, Crosley's actions with respect to the Agreement satisfy M.C.L. § 600.705(1).

Crosley also argues that "anything [he] did regarding the Agreement was strictly in his capacity as Challenge's owner and CEO." [Def.'s Br., Doc. No. 11, p.18].  For purposes of *in personam* jurisdiction, however, that argument is without merit.  In *McNic Oil & Gas Co. v. IBEX Resources Co., L.L.C.*, 23 F.Supp.2d 729 (E.D. Mich. 1998), this Court rejected a similar argument by a corporate officer.  "Michigan courts have not adopted the fiduciary shield doctrine. . . ."  *Id.* at 736.  As such, in this case Crosley "may not argue that he was shielded from personal jurisdiction because his contact with the forum state was conducted in a corporate, and not an individual, capacity."  *Id.* at 737.

For these reasons, the Court holds that Crosley's contacts with the state of Michigan satisfy Michigan's long-arm statute, M.C.L. § 600.705(1).  The Court therefore turns its attention to the question of whether the exercise of such *in personam* jurisdiction, in this case, comports with the requirements of due process.

The inquiry whether a state's long-arm statute satisfies the requirements of due process centers around whether a defendant has established such "minimum contacts" with the forum state "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  This standard is satisfied, and a defendant is subject to *in personam* jurisdiction, when contacts in the forum state "are such that [the defendant] should reasonably anticipate being haled into court there."  *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  With respect to

11

interstate contractual obligations, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are fairly subject to regulation and sanctions in the other state for the consequences of their activities."  *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950).

The Sixth Circuit has further refined the due process analysis by setting forth a three-part test to determine whether specific jurisdiction exists over a nonresident defendant:

> First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair.

*Cole v. Mileti*, 133 F.3d 433, 435 (6th Cir. 1998).

In the instant case, the Court finds the exercise of *in personam* jurisdiction over Crosley in this case to comport with the requirements of the due process clause.  As in *Flint Ink Co.*, here:

> . . . [Crosley] engaged in negotiations [with] a Michigan company. . . The negotiations entailed [his] traveling on one occasion to Michigan.  The Court finds that by traveling out of [his] state to seek out a [business transaction], defendant reached out beyond [his] state of [Indiana] to create a continuing relationship with plaintiff, a citizen of Michigan.  The Court therefore finds that defendant did purposefully avail [himself] of the privilege of conducting activities within the state of Michigan and should have reasonably anticipated being haled into court in that state.

*Flint Ink Co*., 845 F.Supp. at 409.

As Crosley's conduct in the instant case satisfies both the Michigan long-arm statute and the requirements of the due process clause, the Court **DENIES** Crosley's motion to dismiss for lack of *in personam* jurisdiction.

12

IV.  <u>Source One's Breach of Contract Claim Against Crosley Is Dismissed</u>.

In Count III of its complaint, Source One alleges that Crosley breached the Agreement by failing to pay Source One's termination fees once Galaxy and CAI refused to do so. [*See* Complaint, Doc. No. 1, ¶31].  Crosley argues that this cause of action must be dismissed due to the fact that Crosley only signed the agreement in his official, rather than individual, capacity. [Def.'s Br., Doc. No. 11, p.21].  Quoting *Livonia Building Materials Co. v. Harrison Construction Co.*, 276 Mich.App. 514 (2007), Crosley argues that:

> as a general rule an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice – once an officer and again as an individual. . . . In this case, each of the signatories signed the operating agreement only once, and the document makes clear that they did so in their capacities as members. . . , [and] not as individuals.

*Livonia Building Materials Co.*, 276 Mich.App. at 523-24 (internal citations and quotations omitted).  In *Livonia Building Materials Co.*, the corporate officers signed only once, "and typed under the signature [of one of them] is the title 'President.'"  *Id.* at 524.  The following clause in the contract, however, was left blank:

> In consideration of the extension of credit, I _____, the undersigned, as officer of the above named business, or as duly authorized agent of that business, guarantee the payment of [the company's debts]. . . .

*Id*.  Though the Michigan Court of Appeals noted that the company's president signed the document in his official capacity, the court did not hold the president personally liable for the company's debts as this clause was left blank.  *Id.*

In this case, Crosley was both the sole shareholder and CEO of Challenge.  While the Agreement contained the clause that follows, Crosley only signed the contract in his official capacity:

> If for any reason the successor, joint venture or transferee fails, refuses or otherwise neglects to pay the post termination commissions *then [Challenge] and or its principal owners shall pay to [Source One] all post termination commissions* due, again, as described in this agreement.

[Agreement, Def.'s Ex. 2, Doc. No. 11, ¶16 (emphasis added)]. Despite this language, which purports to obligate Crosley personally as Challenge's "principal owner," *Crosley never signed the Agreement in his individual capacity*.

Source One argues that *Livonia Building Materials Co.*, is distinguishable, in that "the Agreement here had only one location for Defendant's signature." [Pl.'s Br., Doc. No. 14, p.12]. While true, it is undisputed that Source One was the primary drafter of the Agreement, with Challenge only suggesting changes to Source One's original draft. If Source One wanted to ensure Crosley would be personally liable under paragraph 16 of the Agreement, it should have insisted that Crosley sign the agreement in his individual capacity.

Finally, Source One argues that "Crosley was a sophisticated business person who signed an Agreement whose terms were clear." *Id*. at 13. That Agreement "contained a term which potentially bound not just the Company itself, nor Crosley as the corporate officer, but Crosley as the 'principal owner' of Challenge." *Id*. at 12-13. While true, the same argument applies equally as to both Source One and Prochaska. When a sophisticated party "agree[s] to be bound by the terms of the document, [it is] incumbent upon [it] to be familiar with the terms of the document to which it was agreeing." *Irwin Seating Co. v. IBM Corp*., 2007 WL 2351007, *9 (W.D. Mich. Aug. 15, 2007). Here, both Crosley and Prochaska were sophisticated businessmen, and agreed to the terms of the Agreement as they were written. If Prochaska and Source One were concerned about securing Crosley's personal guaranty, they should have demanded that Crosley sign the Agreement in his individual capacity.

14

For these reasons, the Court **GRANTS** Crosley's Motion to dismiss Source One's breach of contract claim [Count III] against him.

V.   <u>Source One's Claim for Fraud Against Crosley Is Not Dismissed</u>.

In Count VII of its complaint, Source One alleges that Crosley engaged in negotiations for the Agreement with fraudulent intent. [*See* Pl.'s Complaint, Doc. No. 1, ¶¶62-73]. Crosley argues that this claim must be dismissed for failure to meet the heightened pleading requirements for a fraud cause of action under the Federal Rules of Civil Procedure. [*See* Def.'s Br., Doc. No. 11, p.22]. The Court disagrees for the reasons that follow.

Federal Rule 9(b) requires allegations of fraud "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Accordingly, a fraud complaint "at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) (internal citations omitted).

In the instant case, Source One's pleadings meet the heightened pleading requirements of Rule 9(b). Source One has alleged the time of the alleged fraud: before entering into the Agreement. [*See* Complaint, Doc. No. 1, ¶63]. It has also alleged the content of the alleged fraud: that any sale of Challenge would be conditioned upon a transfer of the Agreement's liabilities. *Id*. Source One has also put forth the alleged fraudulent scheme: that Crosley intended to sell Challenge, but had no intention of requiring the transfer of the Agreement's liabilities to a potential buyer. *Id*. at ¶¶64, 68. Finally, Source One has stated the injury it suffered from the alleged fraud: the amount of unpaid termination fees it claims it is owed. *Id*. at

15

¶73.  Nothing more is required for Source One's to state a valid fraud complaint which survives

a motion to dismiss, and for that reason the Court **DENIES** Crosley's motion to dismiss.

VI.  <u>Source One's Claim for Breach of Contract Against Galaxy Is Dismissed,</u>
   <u>But Not Source One's Claim for Breach of Contract Against CAI.</u>

Count II of Source One's complaint alleges a breach of contract cause of action against

both Galaxy and CAI.  Despite their not being signatories to the Agreement, Source One argues

that Galaxy and CAI breached the following provision of the Agreement:

> This agreement is binding upon the parties hereto as well as their respective
> successors, assigns and/or joint venture partners.  Specifically, in the event of a
> sale or transfer of all or substantially all of the assets, or of any business which is
> commissionable under this agreement, then this agreement shall be binding upon
> the successor, joint venture or transferee of the assets and or any business to the
> same extent as it would be binding upon the Company if no sale or transfer had
> taken place.

[Agreement, Def.'s Ex. 2, Doc. No. 11, ¶16].  It is undisputed that Galaxy was not a party to the

final asset transaction between CAI and Challenge.  Thus, assuming *arguendo* that a breach of

contract had been committed, that breach would only be attributable to CAI, not Galaxy. As

such, Galaxy's motion to dismiss Source One's claims for breach of contract [Count III] is

**GRANTED**.  Source One's breach of contract action against CAI, however, survives CAI's

motion to dismiss.

It is undisputed that CAI *purchased the assets of Challenge*, rather than merging with

Challenge.  As such, CAI does not automatically assume responsibility for Challenges's former

liabilities as would be the case in a merger; rather, CAI is only responsible for the termination

fees owed to Source One if CAI expressly assumed liability for the termination fees owed to

Source One during the asset sale between CAI and Challenge.

Source One attaches an exhibit to its response brief purporting to be a letter dated April

16

28, 2009, whereby CAI and Galaxy notify Challenge's creditors of the asset sale between

Challenge and CAI. [*See* Pl.'s Ex. 5, Doc. No. 14]. A copy of this letter was sent to Source One,

as a potential creditor of Challenge. The letter states that "[a]ll invoices should now be billed to

[CAI]," and states that "*[w]e fully intend to pay the outstanding balances due from the prior*

*company Challenge Inc., over the next few months*." *Id.* (emphasis added).

This letter demonstrates a "reasonably plausible hope" under *Twombley* that, after

discovery, Source One may be able to prove that CAI agreed to assume responsibility for

Challenge's debt to Source One. As such, CAI's motion to dismiss Source One's claim for

breach of contract [Count III] against it is **DENIED**.

> VII.  Source One's Claim for Unjust Enrichment Against Galaxy Is Dismissed,
>        But Not Source One's Claim for Unjust Enrichment Against CAI.

In Count VI of its complaint, Source One alleges claims for unjust enrichment against

Challenge, Crosley, Galaxy and CAI. As discussed *supra*, Source One's claim for unjust

enrichment against Challenge is subject to the Agreement's arbitration provision, and will not be

considered here by this Court. Galaxy and CAI allege, however, that Source One's unjust

enrichment actions against them should be dismissed. [Def.'s Br., Doc. No. 11, pp.23-24].

To state a valid cause of action for unjust enrichment under Michigan law, Source One

must satisfy the following elements:

> (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted
> and retained the benefit; and (3) it would be unjust for the defendant not to pay
> the plaintiff the value of the benefit.

*In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000).

Galaxy and CAI each argue that "[n]either Galaxy nor CAI has ever received services

from Source One. Neither has had any dealings whatsoever with Source One." [Def.'s Br., Doc.

No. 11, p.24].

This Court in *In re Cardizem* observed that "[w]henever one person adds to the other's advantage in any form, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other." *In re Cardizem*, 105 F. Supp. 2d at 671. Furthermore, "[w]hether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct." *Id*.

Source One argues that "its efforts pursuant to the Sales Agreement. . . enriched Defendants Galaxy and CAI indirectly, by conferring an advantage on Challenge." [Pl.'s Br., Doc. No. 14, p.17]. Again, for the reasons explained *supra*, Galaxy was not a party to the asset transaction between Challenge and CAI. As such, Galaxy did not receive a benefit, either direct or indirect, from Source One's efforts, and the Court therefore **GRANTS** Galaxy's motion to dismiss Source One's claim for unjust enrichment [Count VI] against it.

On these facts, however, Source One has a "reasonably plausible hope" under *Twombley* of showing that Source One's efforts provided an indirect benefit to CAI by increasing the value of Challenge before CAI's acquisition. While by no means a certainty, it is "reasonably plausible" that Source One's efforts provided some marginal increase in value to Challenge as a going concern, and that these efforts therefore provided an indirect benefit to CAI. Therefore, the Court **DENIES** CAI's motion to dismiss Source One's claim for unjust enrichment [Count VI] against it.

   VIII.   The Court Denies Source One's Request to Stay All Remaining Counts Pending Arbitration.

In its response brief [*See* Pl.'s Br., Doc. No. 14, p.6], Source One "asks that if some

18

claims in this action proceed to arbitration, that the non-arbitable claims be stayed" pending conclusion of that arbitration. The Defendants argue a stay in these proceedings is not warranted. [*See* Def.'s Br., Doc. No. 11, p.16]. For the reasons below, the Court will not stay proceedings in this matter pending resolution of Source One's claims against Challenge in arbitration.

Though not having been expressly adopted by the Sixth Circuit, this Court has consistently held that "where a complaint presents both arbitrable and non-arbitrable claims, the trial court has the discretion to stay the non-arbitrable claims pending arbitration as a matter of discretionary control of the court's docket." *Yamasaki Korea Architects, Inc. v. Yamasaki Associates, Inc.*, 2008 WL 4940590, *5 (E.D. Mich. Nov. 17, 2008); see also *Spartech CMD, L.L.C. v. Int'l Auto. Components Group N.A., Inc.*, 2009 WL 440905, *12 (E.D. Mich. Feb. 23, 2009).

Citing a Sixth Circuit case as precedent, another court in our circuit has held that "where some claims are non-arbitrable, they can simultaneously proceed in this Court only *if* they can be separated out; in other words, *if their resolution has no effect on the arbitrable issues*." *DRS Precision Echo, Inc. v. Mich. Magnetics, Inc.*, 2003 WL 1141900, *5 (W.D. Mich. Jan 7, 2003) (emphasis in original); citing *Lipskey v. Oppenheimer & Co.*, 717 F.2d 314, 319-20 (6th Cir. 1983). This Court, in *Yamasaki*, previously found that non-arbitrable issues were not sufficiently tied up with arbitrable ones where those claims "are based on separate and distinct projects. . . ." *Yamasaki*, 2008 WL 4040590, *5.

In the instant case, Source One's claims against Crosley, Galaxy, and CAI are separate and distinct from Source One's claims against Challenge. While this case differs from

19

*Yamasaki*, where the claims were about "separate and distinct projects," the Court in *Yamasaki* did not consider that fact alone to be dispositive. Here, the only claims which remain to be litigated are against Crosley and against Galaxy and CAI. While tangentially related, none of these claims is so contingent upon the Source One-Challenge arbitration as to require a stay, because the resolution of the issues here "has no effect on the arbitrable issues" against Challenge. *DRS Precision Echo* at *5. Therefore, the Court will not stay proceedings in this matter pending resolution of the Source One-Challenge arbitration.

## CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's "Motion to Compel Arbitration and For Partial Dismissal" [Doc. No. 11] as follows:

1. **GRANTS** the Defendant's Motion to Compel Arbitration, and **ORDERS** the arbitration of Source One's claims against Challenge for breach of contract [Counts I & III] and unjust enrichment [Count VI], but **DOES NOT ORDER** arbitration of Source One's remaining claims against Crosley, Galaxy and CAI.

2. **DENIES** Crosley's Motion to Dismiss for Lack of Personal Jurisdiction.

3. **GRANTS** Galaxy's Motion to Dismiss Source One's claims against it for breach of contract [Count II] and unjust enrichment [Count VI].

4. **DENIES** CAI's Motion to Dismiss Source One's claims against them for breach of contract [Count II] and unjust enrichment [Count VI].

5. **GRANTS** Crosley's Motion to Dismiss Source One's claim against him for breach of contract [Count III].

6. **DENIES** Crosley's Motion to Dismiss Source One's claim against him for fraud [Count VII].

7. **DECLINES TO STAY** proceedings in this matter until the resolution of Source One's claims against Challenge in arbitration.

20

Thus, after factoring out all causes of action ordered to arbitration and/or dismissed, the

following causes of action, and defendants to those causes of action, remain:

Count II:        Breach of Contract - Against CAI
Count IV:       Fraudulent Conveyance - Against Galaxy & CAI
Count V:        Successor Liability - Against Galaxy & CAI
Count VI:       Unjust Enrichment - Against Crosley & CAI
Count VII:      Fraud - Against Crosley

**IT IS SO ORDERED.**


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  October 22, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on
October 22, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager